**MODERN CONTINENTAL/OBA- YASHI, a Joint Venture, Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and Secretary of Labor, Respondents.**

No. 99–1409.

United States Court of Appeals, First Circuit.

Heard Oct. 8, 1999.

Decided Nov. 15, 1999.

---

Richard D. Wayne, with whom Debra Dyleski–Najjar and Hinckley, Allen & Snyder, LLP were on brief, for petitioner.

Lee Grabel, Attorney, U.S. Department of Labor, with whom Henry L. Solano, Solicitor of Labor, Joseph M. Woodward, Associate Solicitor for Occupational Safety and Health, and Ann Rosenthal, Counsel for Appellate Litigation, were on brief, for respondents.

Before Torruella, Chief Judge, Lynch and Lipez, Circuit Judges.

LYNCH, Circuit Judge.

The Big Dig is a massive construction project that will submerge below the streets of Boston the Central Artery, an elevated interstate highway that has run through the heart of the city since 1959. An enormously important and complicated project, work on the Big Dig can also be dangerous. Two construction workers have died thus far and there have been major and minor injuries. This low accident rate for a project of this magnitude has been accomplished by a great emphasis on employee safety. Nevertheless, the risk of injury and death is still constant.

Modern Continental/Obayashi, a joint venture, holds a contract for a portion of the Big Dig that runs below the existing superstructure. In order to allow for the continued operation of the Central Artery during construction, MC/O, like other Big Dig contractors, constructs "slurry walls" that serve both as support for the old elevated highway above and as side walls for the future submerged highway below. Slurry walls have been the single most important construction technique on the Big Dig, and are especially useful in construction in tight urban environments.

On December 11, 1997, two federal Occupational Safety and Health Administration Compliance Officers conducted an inspection of an MC/O slurry wall excavation along Atlantic Avenue. The officers found that "[e]mployees were exposed to possible serious fall and drowning hazards while walking and/or working in close proximity to slurry wall ground openings, where standard guardrails, fences, barricades, were not installed around the holes, nor was any other equivalent fall protection used to prevent employees from falling into the ground openings." MC/O was cited for a "serious" and "repeated" viola-

tion of 29 C.F.R. § 1926.501(b)(7)(ii).[1] After a period for discovery and a hearing, a Department of Labor Administrative Law Judge affirmed the citation on January 4, 1999. *See Secretary of Labor v. Modern Continental/Obayashi, a Joint Venture*, 18 O.S.H. Cas. (BNA) 1767 (1999). The ALJ's decision became a Final Order of the Occupational Safety and Health Review Commission on February 8, 1999, when no commissioner granted MC/O's Petition for Discretionary Review. MC/O now petitions this court on various procedural and substantive grounds. For the reasons stated below, we deny the petition.

I

Compliance Officers Alexander Steel and Eric Jones inspected an MC/O slurry wall excavation on the evening of December 11, 1997. Slurry walls are constructed in short sections called "panels." Each panel is about three and a half feet wide, nine feet long, and ninety to one hundred feet deep. The construction of a panel involves several steps. First, MC/O digs a hole approximately twenty feet deep to make sure the area is free of underground utilities. It then refills the hole. MC/O next builds concrete guide walls at the top of what will be the panel excavation. The guide walls extend from the surface down to four feet below ground level. An excavator with a bucket called a "clamshell" next digs thirty feet down inside the guide walls; the hole is then examined to make sure the clamshell is digging straight. After the inspection, MC/O fills the hole with slurry (a mixture of water and bentonite, a kind of clay) to a depth of three or four feet below ground level, and the clamshell resumes digging until the excavation is ninety to one hundred feet in depth. As the clamshell removes earth from the excavation, slurry is pumped in periodically to replace it. The slurry's viscosity prevents the sides of the excavation from collapsing.

---

1. Another citation was issued at the same time alleging violations of 29 C.F.R. §§ 1926.502(i)(3) and 1926.502(i)(4). The ALJ vacated this citation after the hearing, and it is not part of this appeal.

Finally, MC/O places reinforcing steel beams in the excavation and pumps in concrete, displacing the lighter slurry. When the concrete hardens, the panel is finished.

The officers observed an MC/O employee, John McDunough, standing three feet from the edge of a slurry wall excavation while assisting the excavator operator. There was a guardrail on one side of the excavation, but McDunough was standing inside the guardrail. Compliance Officer Steel testified before the ALJ that there was nothing to prevent McDunough from falling into the excavation. McDunough told Steel that the excavation was about twenty feet deep. Steel did not measure the distance from ground level to the surface of the slurry in the excavation.

Across the street, at a second slurry wall excavation, the officers observed another MC/O employee, Joe Rego, standing about three feet from the edge of the opening. Like McDunough, Rego was not protected by a guardrail. Rego told Steel that this excavation was sixty to eighty feet deep. Steel observed that the surface of the slurry in the excavation was about ten feet below ground level.

The officers then examined a third slurry wall excavation, which was surrounded by a chain link fence. There was a camera resting on rails over the excavation. One of the MC/O employees present, Loreto Rufo, told Steel that he and the other employees had just placed the camera over the opening; that they had removed a part of the fence in order to do so; and that they had not had any fall protection while they were placing the camera. Rufo also told Steel that this excavation was one hundred feet deep. Steel observed that the surface of the slurry was about three feet below ground level.

Based on this inspection, the officers cited MC/O for violating 29 C.F.R. § 1926.501(b)(7)(ii), which requires that "[e]ach employee at the edge of a well, pit, shaft, and similar excavation 6 feet (1.8 m) or more in depth shall be protected from falling by guardrail systems, fences, barricades, or covers." The officers characterized the violations as "serious" and "repeated" and proposed a penalty of $2,500.

MC/O timely contested the citation. Because procedural arguments are raised in the petition, we review the procedures before the ALJ. On June 16, 1998, the ALJ set a hearing date of September 29, 1998 and issued a planning order which required, inter alia, that all discovery be completed by August 28, and that all motions seeking orders to compel discovery be accompanied by a statement that the parties had made a good faith effort to settle the matter. The planning order also required that the parties file by September 15, 1998 a list of all witnesses, documents, and other exhibits to be offered in evidence.

On June 22, MC/O served a Request for Production of Documents on the Secretary. Request Number 10 was for all investigative files, citations, and settlement agreements involving fall protection for slurry wall construction. The Secretary responded to the Request for Production of Documents on July 28, objecting to Request Number 10 on grounds of relevance. Almost six weeks later, on September 11, MC/O filed a motion to compel production. The ALJ denied the motion on September 14 because it was untimely. MC/O immediately moved for reconsideration, which the judge denied on September 15. MC/O then filed a Resubmitted Motion for Reconsideration, and the judge denied it on October 1, the day of the hearing.

On September 28, MC/O served two subpoenas on the Secretary. The first, a subpoena duces tecum, directed OSHA's keeper of the records to produce at the hearing "any and all evidence, records, correspondence, and documents relating to investigations, citations, and proceedings in which slurry wall construction was involved." The second subpoena directed OSHA's most knowledgeable person in the area of slurry wall construction to appear

at the hearing as a witness. On the day of the hearing, the judge granted the Secretary's motion to quash both subpoenas, holding that they were untimely and overly burdensome.

■ After the two-day hearing, during which MC/O called no witnesses, the ALJ issued a Decision and Order. In order to establish a violation of an OSHA standard, the Secretary must show: (a) the applicability of the cited standard; (b) the employer's noncompliance with the standard; (c) employee access to the violative conditions; and (d) the employer's actual or constructive knowledge of the violation. *See Secretary of Labor v. Atlantic Battery Co.,* 16 O.S.H. Cas. (BNA) 2131, 2138 (1994). The judge's decision addressed each element in turn.

The ALJ held that 29 C.F.R. § 1926.501(b)(7)(ii) *did* apply to the slurry wall excavation despite the fact that, as MC/O pointed out, the standard did not expressly mention slurry wall openings. In light of Commission precedent that standards "are to be broadly and reasonably construed to effectuate the Act's express purpose, which is 'to assure as far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources,'" *Secretary of Labor v. Hackney, Inc.,* 16 O.S.H. Cas. (BNA) 1806, 1808 (1994), the ALJ concluded that the fact that slurry wall excavations were not explicitly listed in the standard was not dispositive. In her view, the terms used in the standard—"a well, pit, shaft, and similar excavation"—were not exclusive or restrictive, and the ordinary meaning of the terms encompassed "a broad range of man-made openings, cavities or depressions in the ground created by cutting, digging or scooping," including the slurry wall excavations in question.

The ALJ also rejected MC/O's contention that the standard did not apply to its slurry wall excavations because when they were full of slurry, the excavations were not "6 feet ... or more in depth." She

observed that the record showed that the excavations contained no slurry during the first stage of digging (down to the thirty foot level), and that even during later stages the surface of the slurry was sometimes ten to fifteen feet below ground level. She rested her holding, however, on her conclusion that the plain meaning of the phrase "6 feet ... or more in depth" refers to the distance from ground level down to the bottom of the excavation, not to the surface of the slurry. In support of this conclusion, she pointed to the distinction between subsection 501(b)(7), which refers to areas six feet or more "in depth," and most of the other subsections of 501(b), which refer to areas that present a risk of falling six feet or more.

The ALJ also turned aside MC/O's challenge to the standard as unconstitutionally vague. Based on her view of the ordinary meaning of the language of the standard, she found that the language is not so vague that "men of common intelligence must necessarily guess at its meaning and differ as to its application." *Georgia Pac. Corp. v. OSHRC,* 25 F.3d 999, 1005 (11th Cir.1994) (quoting *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). She also found that MC/O had reasonable notice that slurry wall excavations were covered by the standard because MC/O had been cited under that very standard for not having barriers around its slurry wall excavations in 1996.

Having found that the cited standard applied to slurry wall construction, the ALJ held that the Secretary had met the burden of proving the employer's noncompliance with the standard and employee access to the violative conditions by a preponderance of the evidence through the testimony of Compliance Officer Steel, described above, and the testimony of Loreto Rufo. Rufo, who had worked for MC/O for seven years, testified that he worked around the edges of slurry wall excavations without any fall protection, and that at times he had been exposed to the risk of falling up to thirty feet. He also testified

that he knew of four employees who had fallen into slurry wall excavations; two had sustained serious shoulder injuries. MC/O did not present any witnesses at the hearing to rebut this testimony.

Finally, the ALJ found that MC/O had constructive knowledge of the violation because the conditions in and around the slurry wall excavations were clearly visible to any passerby. She found that the 1996 citation under the same standard on the same project put MC/O management on notice.

After finding that the Secretary had successfully established a violation of § 1926.501(b)(7)(ii), the ALJ evaluated whether the Secretary had properly classified the violation as repeated and serious. Under Review Commission precedent, a violation is repeated under the OSH Act if it occurs when there is a Commission final order against the same employer for a substantially similar violation. *See Secretary of Labor v. Edward Joy Co.*, 15 O.S.H. Cas. (BNA) 2091, 2092 (1993). Unless the violation involves a general standard, the Secretary establishes a prima facie case of similarity by showing that both violations are of the same standard. *See id.* Because MC/O had been cited for violations of the same standard in 1996 for allowing its employees to work next to a slurry wall excavation without fall protection, the ALJ held that the current violation was properly characterized as repeated. She also found that the current violation was serious, because there was a "substantial probability that death or serious physical harm could result." 29 U.S.C. § 666(k). The record showed that the edges of the excavation become slippery with slurry. This created a risk that a worker might slip and fall into the excavation, hitting his or her head against the concrete guide walls; an unconscious person might even drown after landing face-down in the slurry.[2] Furthermore, be-

cause only two people worked on the excavation, and because they worked at night, rescue efforts might be delayed. Finally, Rufo's testimony showed that four employees actually had fallen into slurry excavations, and that two had been seriously injured.

In calculating the amount of the penalty, the ALJ looked at the four criteria given in 29 U.S.C. § 666(j): the size of the employer; the gravity of the violation; the employer's good faith; and its history of previous violations. OSHA had initially proposed a gravity-based penalty of $2,500 because of the risk of serious injuries or death. The Secretary pointed out in a post-hearing brief, however, that OSHA's Field Inspection Resource Manual actually calls for the gravity-based penalty to be multiplied by five when an employer of MC/O's size commits a repeat violation. The judge accepted the Secretary's argument and assessed a penalty of $12,500.

## II

MC/O contests each of the ALJ's conclusions, from discovery through the assessed penalty. We review each stage of the proceedings in turn.

### A. Discovery

■ MC/O contends that the ALJ abused her discretion and prejudiced MC/O by denying its motion to compel discovery and by quashing its subpoenas. The judge's planning order called for all discovery to be completed by August 28; MC/O filed its motion to compel on September 11. MC/O argues that although the planning order did specify a date for the completion of discovery, it did not contain a specific deadline for motions to compel discovery in the event of a dispute. MC/O also emphasizes that on September 10 the judge granted a motion to compel discovery that had been filed by the Secre-

---

2. Although MC/O scoffs at the idea that someone could drown in the slurry (it asserts that a person would bob up and down like a cork), it presented no evidence to sustain this proposition.

tary on September 2, after the August 28 deadline. Finally, MC/O claims that the judge's reasons for quashing the subpoenas—the fact that they were served just three days before the hearing and their overburdensome nature—were impermissible.

Appellate courts seldom intervene in discovery questions. "The standard of review in discovery matters is not appellant-friendly. The court of appeals 'will intervene in such matters only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party.'" *Faigin v. Kelly,* 184 F.3d 67, 84 (1st Cir. 1999) (quoting *Mack v. Great Atl. & Pac. Tea Co.,* 871 F.2d 179, 186 (1st Cir.1989)). In this instance, MC/O's lack of diligence both in pursuing its own discovery requests and in responding to the Secretary's provides more than adequate grounds for the judge's refusal to grant MC/O's untimely motion to compel. *Cf. Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 92–94 (1st Cir.1996). We also find no reason to question the ALJ's quashing of the two subpoenas.

## B. The Violation

MC/O presents four challenges to the ALJ's decision that the citation should be upheld.

■ First, MC/O contends that § 1926.501(b)(7)(ii) is unconstitutionally vague (on its face or as applied) and violates its due process rights. We disagree. Though this is a matter of first impression, it is clear, from a plain reading of the regulation, that § 1926.501(b)(7)(ii) applies to slurry wall construction. In *F.A. Gray, Inc. v. OSHRC,* 785 F.2d 23, 24–25 (1st Cir.1986), and *Cape & Vineyard Division of New Bedford Gas v. OSHRC,* 512 F.2d

1148, 1152 (1st Cir.1975), this Circuit overruled citations that were based on vaguely worded regulations and that sanctioned conduct that was not "unacceptable in light of the common understanding and experience of those working in the industry." *F.A. Gray,* 785 F.2d at 25 (quoting *Cape & Vineyard,* 512 F.2d at 1152). The regulation here, in contrast, is clear on its face. It requires that "[e]ach employee at the edge of a well, pit, shaft, and similar excavation 6 feet (1.8 m) or more in depth shall be protected from falling by guardrail systems, fences, barricades, or covers." 29 C.F.R. § 1926.501(b)(7)(ii). The plain language identifies a specific hazard and delineates a specific precaution. As a consequence, we need not inquire into industry standards.

■ Furthermore, to the extent that the regulation is ambiguous, we defer to the Secretary's interpretation. That interpretation is reasonable. *See Martin v. OSHRC,* 499 U.S. 144, 158, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991). The interpretation took place here through the issuance of a citation. MC/O says it was unfairly deprived of prior notice that this would be the Secretary's interpretation. While "the decision to use a citation as the initial means for announcing a particular interpretation may bear on the adequacy of notice to regulated parties, on the quality of the Secretary's elaboration of pertinent policy considerations, and on other factors relevant to the reasonableness of the Secretary's exercise of delegated lawmaking powers," *id.* (citations omitted), these considerations are countered in this case by MC/O's prior citation for violation of the same regulation in the same circumstances. Even though this prior citation was settled, MC/O was on notice for this purpose.[3]

---

**3.** MC/O also cites *Langer Roofing & Sheet Metal, Inc. v. Secretary of Labor,* 524 F.2d 1337 (7th Cir.1975), for the proposition that a court need not defer to the Secretary's interpretation "when ... the interpretation has

not been consistently applied." *Id.* at 1339. MC/O, however, has presented no evidence of inconsistency and the earlier citation of MC/O appears to belie this claim.

■ Second, MC/O disputes the ALJ's finding that the Secretary met her burden to show a violation of § 1926.501(b)(7)(ii). We disagree. "The Commission's findings of facts are conclusive as long as they are 'supported by substantial evidence on the record considered as a whole.'" *P. Gioioso & Sons, Inc. v. OSHRC*, 115 F.3d 100, 108 (1st Cir.1997) (quoting 29 U.S.C. § 660(a)). This is true even when, as here, the Commission "does not itself hear witnesses but instead adopts an ALJ's findings of fact." *Id.*

MC/O's contention with regard to substantial evidence is mostly a recapitulation of its argument about the regulation's vagueness. To the extent that it is not, we find that the ALJ's conclusions were supported by substantial evidence of employee exposure and employer knowledge of the violative conditions and of its noncompliance with the standard. There was also substantial evidence to support a finding that the slurry wall excavations could be categorized as "well[s], pit[s], shaft[s], [or] similar excavation[s] 6 feet (1.8 m) or more in depth." 29 C.F.R. § 1926.501(b)(7)(ii). Especially in light of "the frailty of [the employer's] rebuttal ... there is no principled basis on which a court could justify substituting its judgment for the factfinder's." *Gioioso*, 115 F.3d at 108.

■ Third, MC/O contends that it was the Secretary's burden to show that the regulation was feasible as applied to slurry wall construction. MC/O's argument is simply wrong. As this court stated more than twenty years ago, "where a specific duty standard contains the method by which the work hazard is to be abated, the burden of proof is on the employer to demonstrate that the remedy contained in the regulation is infeasible under the particular circumstances." *A.E. Burgess Leather Co. v. OSHRC*, 576 F.2d 948, 952 (1st Cir.1978) (quoting *Ace Sheeting & Repair Co. v. OSHRC*, 555 F.2d 439, 441 (5th Cir.1977)) (internal quotation marks omitted); *accord Reich v. Trinity Indus. Inc.*, 16 F.3d 1149, 1155 (11th Cir.1994) (quoting *Ace Sheeting*); *Quality Stamping Prods. v. OSHRC*, 709 F.2d 1093, 1099 (6th Cir. 1983) (citing *A.E. Burgess* and *Ace Sheeting*); *Faultless Div., Bliss & Laughlin Indus., Inc. v. Secretary of Labor*, 674 F.2d 1177, 1189 (7th Cir.1982) (citing *A.E. Burgess*); *Southern Colo. Prestress Co. v. OSHRC*, 586 F.2d 1342, 1351 (10th Cir. 1978) (citing *Ace Sheeting*); *Brennan v. OSHRC*, 513 F.2d 1032, 1035 (2d Cir. 1975).[4] Employers know best why a specific standard may be infeasible under particular circumstances, so it makes sense to place the burden on them and not the Secretary.

Section 1926.501(b)(7)(ii) is a specific duty standard that contains the method by which the work hazard is to be abated. MC/O did not call any witnesses to demonstrate infeasibility, nor did it submit any evidence thereof. Thus, infeasibility is no defense in this case.

■ Fourth, and finally, MC/O argues that even if the fall protection standard applies, the ALJ erred in finding that the standard was violated because MC/O utilized barriers to the extent feasible. It argues, based on the predecessor to

---

4. MC/O mistakes the burden of proof in cases where a regulation includes a specific duty standard, as here, with the rule in cases: where the regulation contains no specific duty standard, *see, e.g., Diebold, Inc. v. Marshall*, 585 F.2d 1327, 1333 (6th Cir.1978); where the regulation specifically mentions a feasibility requirement, *see, e.g., Diversified Indus. Div., Indep. Stave Co. v. OSHRC*, 618 F.2d 30, 32 (8th Cir.1980) (cited by MC/O); where the proposed regulation is challenged in a pre-enforcement review, *see, e.g., Texas Indep.* *Ginners Assoc. v. Marshall*, 630 F.2d 398, 414 (5th Cir.1980); and where the Secretary seeks enforcement of a citation under the Act's general duty clause, 29 U.S.C. § 654(a)(1), *see, e.g., National Realty & Constr. Co. v. OSHRC*, 489 F.2d 1257, 1268 (D.C.Cir.1973). In these cases, in contrast to the situation here, courts have held that the burden of proof is on the Secretary. *Cf. Faultless Div., Bliss & Laughlin Indus., Inc. v. Secretary of Labor*, 674 F.2d 1177, 1189 (7th Cir.1982).

§ 1926.501(b)(7), that the standard is really intended to warn unsuspecting passersby of the presence of an excavation, rather than to prevent people who are working on the excavation itself from falling into it. MC/O claims that it kept barriers around slurry wall excavations to the extent feasible, thereby complying with the standard.

MC/O's argument turns on a reading of the regulation that we reject as a matter of law. It contends that the meaning of § 1926.501(b)(7) can be explained by reference to its predecessor § 1926.651(d), which was intended to require employers to warn passersby about hidden excavations. It is true that the general standard for excavations is designed to give persons warning, but there is a special standard at issue here for "well[s], pit[s], shaft[s] and similar excavation[s]." MC/O's argument ignores the distinction between the two subsections of § 1926.501(b)(7)(i) and (ii). Subsection (i), which requires warnings around excavations that are difficult to see, is related to § 1926.651(d). Subsection (ii), however, which requires barriers to prevent employees from falling into "well[s], pit[s], shaft[s] and similar excavation[s]," is not related; it was promulgated separately, five years after subsection (b)(7)(i). Thus, the purpose of the safety measures as to slurry wall excavations is not limited to notice of hidden excavations, and simple barriers may not suffice.

 To the extent that MC/O is arguing that, as a matter of fact, it did all that was feasible, it waived this argument by not raising it in its Petition for Discretionary Review. The PDR makes no reference to MC/O's use of barriers to the extent feasible. Under the judicial review provision of the OSH Act, 29 U.S.C. § 660(a), "[n]o objection that has not been urged before the Commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." Under this circuit's interpretation of § 660(a), failure to include an objection in a PDR means that it cannot be

presented later to the court of appeals. "In an OSHA case, an objection is not 'urged' in the requisite sense (and will not be deemed preserved for judicial review) unless the PDR conveys the substance of the objection face up and squarely, in a manner reasonably calculated to alert the Commission to the crux of the perceived problem." *Gioioso,* 115 F.3d at 107.

## C. The Penalty

 MC/O argues that the judge abused her discretion in finding that the violation was "repeat," and that, assuming the citations are not vacated, they must be reclassified and the penalties substantially reduced. Under the OSH Act, a violation is "repeated" if the employer "violated the same standard on an earlier occasion in a substantially similar fashion." *Id.* at 103 n. 2. MC/O admits that it was cited under § 1926.501(b)(7)(ii) in 1996 for the lack of fall protection at another Big Dig slurry wall excavation, but it argues that the 1996 violation occurred under substantially different circumstances because in that case the excavation was not located directly underneath the supports for the Central Artery. Because, MC/O argues, the confined space under the Central Artery makes digging with barriers in place impossible, the circumstances of the two citations cannot be termed "substantially similar."

This argument is without merit. Both violations occurred on the same project and both involved precisely the same standard and precisely the same excavation process. Even if it were impossible to use barriers at all times under the Artery, there is no reason to believe that MC/O could not have provided *some* form of fall protection to its employees when they were working on the edge of the slurry wall excavations. Patrick Catino, OSHA Assistant Area Director, testified that MC/O could have used alternatives to barriers if and when necessary, such as a safety belt system. MC/O put in no evidence to the contrary. Instead, the record shows MC/O leaving its employees com-

pletely unprotected on occasion, just as it had when it was cited in 1996. Therefore, the judge's classification of the violation as "repeated" is supported by substantial evidence.

 Finally, MC/O argues that the violation should be reclassified to de minimis and the penalty eliminated, citing *Donovan v. Daniel Construction Co.*, 692 F.2d 818 (1st Cir.1982). *Donovan* states that a "violation of the literal terms of [a] standard can be *de minimis* because the departure's connection with safety and health is not 'direct or immediate,'" and cites as an example a ladder with rungs thirteen inches apart when the standard called for them to be no more than twelve inches apart. *Id.* at 821. MC/O's violation, by contrast, did have a "direct and immediate" connection with safety and health. The record contains unrebutted testimony that four MC/O employees fell into slurry wall excavations. The judge correctly chose not to classify MC/O's violation as de minimis.

### III

As is often the case in enforcement proceedings under the OSH Act, the parties dispute the application of a regulation to a specific form of technology. The Secretary, having chosen the citation route, may not want to go through the notice and comment procedures that would be required to adopt a regulation specific to slurry walls. MC/O does not want to be burdened with safety precautions that it may believe are unnecessary and infeasible. It may, in fact, be more sensible to have a more finely tuned regulation specific to slurry wall construction or to such construction in a confined space, such as underneath the Central Artery. But, having squandered the opportunity to demonstrate this to the ALJ, and having failed to take advantage of other opportunities to

---

comply with the regulations under the Act, MC/O cannot succeed here.[5]

The petition is *denied.*

---

5. This does not mean that MC/O, or a similarly situated contractor, need be saddled with this regulation in the future, if saddled it is. MC/O, for example, may seek a variance or the industry may propose a special rule. *See* 29 U.S.C. § 655(b)(1), (d); 29 C.F.R. § 1905.11; *cf. A.E. Burgess*, 576 F.2d at 952.