**BEAVER PLANT OPERATIONS, INC., Petitioner,**

v.

**Alexis M. HERMAN, Secretary of Labor; Occupational Safety and Health Review Commission, Respondents.**

No. 99–2257.

United States Court of Appeals, First Circuit.

Heard June 7, 2000.

Decided Sept. 7, 2000.

Brent A. Singer, with whom Phillip D. Buckley, and Rudman & Winchell, LLC were on brief, for petitioner.

Lee Grabel, Attorney, U.S. Department of Labor, with whom Henry L. Solano, Solicitor of Labor, Joseph M. Woodward, Associate Solicitor for Occupational Safety and Health, and Bruce Justh, Counsel for Appellate Litigation, were on brief, for respondent Secretary of Labor.

Before TORRUELLA, Chief Judge, LIPEZ, Circuit Judge, and

SCHWARZER,* Senior District Judge.

TORRUELLA, Chief Judge.

The appellant, Beaver Plant Operations, Inc., seeks review of the Final Judgment of the Occupational Health and Safety Review Commission. For the reasons discussed below, we vacate the citation.

## BACKGROUND

### I. Factual Background

The following facts are not in dispute. Beaver runs a wood-burning electricity plant in Livermore Falls, Maine. One of the buildings in Beaver's plant has a 140–foot tall emissions stack on its roof with a steel ladder attached to its side.

On August 26, 1996, the body of an employee of Eastmount Environmental, an outside environmental testing company, was found in a crevice on the roof, near the base of the stack. It was apparent that he had fallen, but there were no witnesses to the accident.

The fall prompted an OSHA inspection. As a result of the investigation, Beaver received a citation for a violation of OSHA standard 29 C.F.R. § 1910.23(a)(2), which provides:

> Every ladderway floor opening or platform shall be guarded by a standard railing with standard toeboard on all exposed sides (except at entrance to opening), with the passage through the railing either provided with a swinging gate or so offset that a person cannot walk directly into the opening.

§ 1910.23(a)(2) [hereinafter § (a)(2)].

Approximately seventy feet above the roof, the ladder passes through a rectangular opening in the floor of a platform that encircles the stack. The floor opening is bordered on one side by a railing that guards the perimeter of the platform and on the opposite side by the stack and the ladder. Beaver received the citation because the two other sides of the opening are not guarded.

The ladder is used by only two Beaver employees who periodically climb the stack and perform tasks. Those two employees have been with the company since the construction and start up of the plant in 1992. They are required, and were trained, to use a ladder climbing device, which is attached to a belt around their waste and to a rail of the ladder. When they step off the ladder onto the platform they are supposed to attach themselves to a safety lanyard. Their work is conducted away from the ladderway opening.

Additionally, the ladder is used four times a year by an employee of Eastmount Environmental to conduct quarterly emissions tests. Eastmount trains its employees on the use of safety climbing devices and provides its own safety equipment.

### II. The ALJ's Opinion

After hearing testimony from an OSHA expert, industry experts, a design engineer from the firm that designed Beaver's worksite, a Beaver plant engineer, and other Beaver employees, the Administrative Law Judge ("ALJ") vacated the citation. First, the ALJ observed that two standards apply to platforms, § (a)(2), which applies to ladderway floor openings, and 29 C.F.R. § 1910.23(c)(1) [hereinafter § (c)(1)],[1] which applies to open-sided floors, platforms, and runways. The ALJ then noted that confusion arises because § (a)(2) applies to ladderway floor openings and § (c)(1) refers to an "entrance to a ... fixed ladder." However, relying on the testimony of OSHA's expert, the ALJ explained the difference: Section (a)(2) applies to a ladder opening on the interior of the platform, which must be protected, and

---

* Of the Northern District of California, sitting by designation.

1. Section (c)(1) provides in relevant part: "Every open-sided floor or platform 4 feet or more above adjacent floor or ground level shall be guarded by a standard railing ... on all open sides except where there is entrance to a ramp, stairway, or fixed ladder...."

§ (c)(1) applies to a ladder opening on the exterior of the platform (an opening on the perimeter), which need not be protected.

Determining that § (a)(2) is the proper standard for Beaver's floor opening, the ALJ addressed the Secretary's interpretation of § (a)(2). The Secretary argued that § (a)(2) requires guarding in the form of a swing gate or offset railing at the entrance to a ladderway floor opening. The ALJ commented, however, that such a reading, which would admittedly achieve the standard's goal of protecting employees working on the platform from inadvertent falls through the entrance, failed to account for the parenthetical "(except at entrance to opening.)" The ALJ recognized that only in the absence of the parenthetical does the standard unambiguously require a swing gate or offset railing at the entrance to the opening. Significantly, at the hearing, the OSHA expert was unable to explain the meaning of the parenthetical in a manner consistent with the Secretary's interpretation. The ALJ concluded, therefore, that the presence of the parenthetical could reasonably be understood to exclude the entrance to the ladderway from guarding requirements, an understanding that is consistent with the standards for guarding perimeter entrances in § (c)(1) and stairway floor openings in 29 C.F.R. § 1910.23(a)(1) [hereinafter § (a)(1) ].[2] In summary, the ALJ concluded that the Secretary's interpretation was inconsistent with the other standards for guarding floor openings and was, therefore, unreasonable.

As a consequence, the ALJ found, relying on expert testimony, that the ambiguous language created confusion in the industry so that there is no consensus on the guarding required at openings. Despite testimony from Beaver's plant engineer acknowledging that some form of guarding was required[3] and the availability of three OSHA interpretive letters[4] that explain the Secretary's interpretation of § (a)(2), the ALJ held that "the Secretary had not provided fair notice of its interpretation of the cited standard as applied in this case."

Beaver also presented evidence that until August 1996, none of Beaver's employees or any employee of an outside consultant had ever had an incident related to the ladder, nor had any employee voiced a concern about the safety of the ladderway opening. Moreover, one of the Beaver employees who periodically worked on the platform testified that a swing gate would make it more difficult to maneuver in the work area. However, the ALJ did not make a finding regarding Beaver's knowledge of a hazardous condition, or lack thereof.

Based on the finding that Beaver did not have notice of the standard's requirements, the ALJ vacated the citation.

**2.** Section (a)(1) provides in relevant part: "Every stairway floor opening shall be guarded by a standard railing.... The railing shall be provided on all exposed sides (except at entrance to stairway)."

**3.** Specifically, the engineer testified as follows:

Q: Do you have any idea of why there should be a chain on either side? Why the drawings called for a chain on the other side—on either side of the platform opening?
A: Statute requires a closure.
Q: What statute?
A: C.F.R. 29, concerning ladders and walkways.
Q: Requires—what do you mean by closure?

A: It requires an automatically closing gate. There are exceptions for a chain.

· · · · ·

ALJ: ... Is it your understanding that the opening of that platform on the stack should have had chains on either side of the platform?
A: I have seen a drawing that indicates that there are chains installed either side of the opening. Yes, sir.
ALJ: And it's your understanding that that's what they [sic] standard requires?
A: That's correct.
J.A. at 103 (transcript of hearing).

**4.** The Commission's opinion cites four letters, but only three letters were introduced into evidence before the ALJ and the Commission.

### III. *The Commission's Opinion*

The Commission reversed the ALJ's decision and affirmed the citation. The Commission concluded that the parenthetical applied to the words just preceding it "by a standard railing with standard toeboard," rather than to the more general guarding requirement and, therefore, that the entrance must be guarded by a swinging gate or offset railing. The Commission reasoned that there is no legal requirement that § (a)(2) be consistent with § (a)(1) or § (c)(1), particularly in light of "differing considerations and purposes behind the different guarding requirements." The Commission also concluded that "the language of the standard provides adequate notice that the ladderway floor opening must be guarded." The Commission referenced the OSHA Interpretive Letters but merely to demonstrate that the Secretary's interpretation of § (a)(2) in this proceeding was consistent with its earlier interpretations. *Cf. Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 157, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991) (noting that less formal means of interpreting regulations, such as interpretive rules or agency enforcement guidelines, can be brought to bear on the reasonableness of the Secretary's position). The Commission drew no factual conclusions from the interpretive letters with respect to Beaver's actual or constructive notice. Additionally, the Commission dismissed any reference to industry practice based on its conclusion that the standard was not vague or ambiguous. The Commission then completed its analysis by finding that employees were exposed to, and that Beaver had knowledge of, the violative condition.

### DISCUSSION

▉ Our analysis of the Commission's decision requires two steps. First, the Court reviews the Commission's interpretation of § (a)(2) to determine whether it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Empire Co. v. Occupational Safety & Health Review Comm'n*, 136 F.3d 873, 874 (1st Cir.1998); *see also Reich v. Simpson, Gumpertz & Heger, Inc.*, 3 F.3d 1, 2 (1st Cir.1993). In making this determination, " 'an agency's construction of its own regulations is entitled to substantial deference.' " *Empire*, 136 F.3d at 875 (quoting *Simpson*, 3 F.3d at 2). Accordingly, the agency's interpretation should be given full effect if it is reasonable, that is if it "sensibly conforms to the purpose and wording of the regulation." *Id.; see also Simpson*, 3 F.3d at 2. As a consequence, even if the regulation is ambiguous, the Court defers to the agency's reasonable interpretation. *See Modern Continental/Obayashi v. Occupational Safety & Health Review Comm'n*, 196 F.3d 274, 281 (1st Cir.1999); *Simpson*, 3 F.3d at 2.

▉ The second component of our analysis is, if the Secretary's interpretation is reasonable, whether the appellant had adequate notice of the Secretary's interpretation of the regulation. *See Modern Continental*, 196 F.3d at 281; *Diebold, Inc. v. Marshall*, 585 F.2d 1327, 1335 (6th Cir. 1978); *Diamond Roofing Co. v. Occupational Safety & Health Review Comm'n*, 528 F.2d 645, 649 (5th Cir.1976). The burden is on the Secretary to establish that Beaver had actual or constructive notice that, pursuant to § (a)(2), a swing gate or offset railing was required at the entrance to the opening. *See Peterson Bros. Steel Erection Co. v. Reich*, 26 F.3d 573, 575 (5th Cir.1994); *Cape & Vineyard Div. of New Bedford Gas v. Occupational Safety & Health Review Comm'n*, 512 F.2d 1148, 1152 (1st Cir.1975). If, however, there is evidence of actual knowledge of a hazardous condition, there is no fair notice problem. *See Cape & Vineyard*, 512 F.2d at 1152. We review factual findings to confirm that they are supported by "substantial evidence" in the record considered as a whole. *See Empire*, 136 F.3d at 875; *Simpson*, 3 F.3d at 2. Our review of the record includes the ALJ's factual findings.

*See NLRB v. Boston Dist. Council of Carpenters,* 80 F.3d 662, 665 (1st Cir.1996).

## I. *The Standard*

■ The dispute in this case centers on the meaning of the parenthetical "(except at entrance to opening)" in § (a)(2). The Secretary's position is that the standard plainly requires a protective guard on all exposed sides of the platform opening. According to the Secretary, the parenthetical excepts "the entrance to opening" from the requirement of a standard railing and standard toeboard, and the second clause of the standard provides the alternative requirement for the entrance. In other words, the parenthetical modifies the word "standard." While this reading is reasonable, both grammatically and in view of OSHA's goal of eliminating the work hazard of inadvertent falls through the ladderway opening, it is by no means the only obvious interpretation of the standard, as the Secretary so disingenuously contends.[5] To the contrary, the Secretary's interpretation renders the parenthetical superfluous. As the ALJ observed, the Secretary's interpretation would be plain from the standard in the absence of the parenthetical. And at the administrative hearing, the OSHA expert could not explain the significance of the parenthetical.[6] In addition, the identical parenthetical in § (a)(1), the section that immediately precedes the one at issue in this case, completely exempts the entrance to a stairway floor opening from all guarding requirements as all parties agree.

■ Thus, we disagree with the Commission that the standard is plain on its face. Despite our view that the regulation is ambiguous, however, the Secretary's reasonable interpretation is still due deference, and there is no need to resort to industry standards for further insight. *See Modern Continental,* 196 F.3d at 281. It follows, therefore, that the Commission's legal conclusion is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *Empire,* 136 F.3d at 874, and we affirm the Commission's decision with respect to the meaning of the standard.

## II. *Adequate Notice*

■ However, in light of the "inartful drafting" of the standard, *Diebold,* 585 F.2d at 1336, in addition to the inconsistency of the Secretary's interpretation with other very similar standards, this Court is not prepared to affirm the Commission's determination that Beaver had notice of the Secretary's interpretation based on the language of the standard alone. As a point of clarification, the Commission did not make a factual finding on the issue of notice but relied instead on its legal conclusion that the standard was plain on its face. We determined above, however, that the standard was ambiguous, and we cannot, therefore, find constructive notice.

Thus, the issue before this Court is whether Beaver had actual notice of the specific requirements of § 23(a)(2) that Beaver had to provide a swing gate or offset rail at the ladder opening. *See Pe-*

---

5. In contrast, the appellant suggests that the parenthetical excepts the entrance from the railing requirement entirely. The appellant proposes that the second clause of the standard applies instead to passage from the platform onto another platform or to walkthrough ladders, the railings of which extend through the floor opening and flare out at the entrance to the ladder. While this interpretation may be reasonable, it does not dissuade us from adopting the agency's reasonable interpretation, which is due significant deference. *See Modern Continental,* 196 F.3d at 281.

6. At oral argument, counsel for the Secretary accused the Court of mischaracterizing the expert's testimony. Counsel suggested that the expert was asked only why the parenthetical was in the standard and not what it meant. However, after reviewing the colloquy between the ALJ and the expert and its context, we read the expert's testimony as an admission that he could not account for the parenthetical in his interpretation of the standard.

*terson*, 26 F.3d at 575; *Faultless Div., Bliss & Laughlin Indus., Inc. v. Secretary of Labor*, 674 F.2d 1177, 1186 (7th Cir. 1982); *Diebold*, 585 F.2d at 1336–37; *Cape & Vineyard*, 512 F.2d at 1152. Beaver cannot be cited for arguably violating an industry guideline or practice that is not reflected in the OSHA regulations.

## A. *Actual Notice*

 Accordingly, we consider the ALJ's determination, based on evidence presented at the hearing, that "the Secretary has not provided fair notice of its interpretation of the cited standard as applied in this case." This factual finding is preceded by an analysis of the ambiguity of the standard, testimony from an OSHA administrator who could not explain the meaning of the parenthetical, and testimony from industry experts regarding industry practice and understanding of the standard. Although not specifically mentioned, the ALJ, himself, questioned Beaver's plant engineer regarding his understanding of the standard. Based on the evidence, and despite the engineer's testimony, the ALJ found that Beaver did not have notice. We conclude that the ALJ's finding is supported by substantial evidence in the record.

The unchallenged testimony of industry experts established that § (a)(2) was not understood to impose any guarding requirements on ladderway floor openings. In fact, the common safety precaution, the use of chains to guard entrances to ladderway floor openings, and more recently automatic gates, finds its source in industry guidelines and practice and not in OSHA regulations.

The Secretary directs the Court to the problematic testimony of Beaver's plant engineer as evidence of actual notice. Indeed, the engineer attests that "29 C.F.R" requires some guarding around the entrances to the opening. However, it is evident, upon closer examination of his testimony, that his understanding originates in the industry guidelines and prac-

tice and not the OSHA standard. The engineer was obviously confused, as the ALJ must have recognized after closely questioning him. In actuality, if Beaver had in place an automatic gate or chain, as the engineer suggested, the plant would still be in violation of the OSHA standard according to the Secretary's interpretation.

The engineer's reference to "the statute" "29 C.F.R." is misleading. That regulation is the general citation for all labor regulations. Even § 1910.23 applies to all floor and wall openings and holes, including stairway floor openings and open-sided floors, platforms and runways. Thus, the engineer was not necessarily making a specific, and knowing, reference to the standard at issue in this case. If, as suggested above, it would be reasonable to interpret the standard as exempting the entrance to the opening from any guarding requirements, as 29 C.F.R. indisputably does for other types of ladderway openings, the engineer's awareness of contrary industry guidelines does not put him on notice. The Commission can not issue a citation for ignoring industry practice. Consistent with the ALJ's finding of notice, the more plausible interpretation of the engineer's testimony is that it comports with the industry guidelines and practice.

Nor is the lack of notice cured by the availability of the interpretive letters. First, the plant was built in 1992, and the letters, dated 1992 and 1993, did not become publically available on the internet until 1995. Second, we have not been presented with any authority establishing the weight of these letters or a duty on the petitioner to be aware of these letters.

## B. *Knowledge of Hazardous Condition*

 While proof of Beaver's "actual knowledge" of a hazardous condition could negate the question of fair notice, *see Cape & Vineyard*, 512 F.2d at 1152, the evidence that the platform opening was unguarded

**32**

is not itself dispositive. Certainly, the plant engineer's testimony that he believed some type of guarding was required, and the industry practice of providing protection, suggest that Beaver should have been aware of a hazardous condition. Similarly, the Commission concluded that Beaver failed to exercise reasonable diligence with respect to the violative condition because Beaver failed to inspect the platform or determine what hazards existed.

However, the Commission presumed that a violative condition—namely, a ladderway platform opening without a swing gate or offset railing—is itself hazardous. It is not at all clear to this Court that an unguarded ladderway floor opening is necessarily a hazardous condition, particularly in light of the regulations which permit other types of unguarded platform openings. Neither party has directed this Court to significant evidence establishing or belying the existence of a hazardous condition on the basis of an unguarded opening.

Furthermore, there is evidence in the record countering Beaver's awareness of a hazardous condition. For example, Beaver submitted unchallenged evidence that neither of the two employees, or any of the consultants, who occasionally worked on the platform ever expressed concern about a hazardous condition, and there were no reported incidents. In fact, one of Beaver's employee's testified that a swing gate would interfere with his ability to work safely. In addition, other safety precautions were taken, such as the use of safety lanyards fastened to the workers as they maneuvered off and onto the ladder. And finally, an engineer who worked for the firm that designed the plant testified that he believed it conformed to OSHA's requirements, which tends to indicate that Beaver would be unaware of an existing hazard.

Without factual findings from the Commission or the ALJ on this issue, we decline to conclude, based on this record, that Beaver had knowledge of a hazardous condition.

## CONCLUSION

Although we ultimately agree with the Commission's interpretation of the standard, because Beaver lacked adequate notice of that interpretation, the citation must be **vacated**. This case is **remanded** for proceedings consistent with this opinion.