# United States Court of Appeals
## For the First Circuit

No. 10-2418

P. GIOIOSO & SONS, INC.,

Petitioner,

v.

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION;
HILDA L. SOLÍS, SECRETARY OF LABOR,

Respondents.

PETITION FOR REVIEW OF A FINAL ORDER OF
THE OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION

Before

Lynch, Chief Judge,
Torruella and Thompson, Circuit Judges.

Matthew Watsky, for petitioner.
Scott Glabman, Senior Appellate Attorney, U.S. Department of
Labor, with whom M. Patricia Smith, Solicitor of Labor, Joseph M.
Woodward, Associate Solicitor for Occupational Safety and Health,
and Heather R. Phillips, Counsel for Appellate Litigation, was on
brief for respondents.

March 28, 2012

**TORRUELLA, Circuit Judge.** The Occupational Safety and Health Administration ("OSHA") fined Petitioner P. Gioioso & Sons, Inc. ("Gioioso") $33,700 for violations of safety regulations relating to the excavation of a trench. Gioioso contested the fine at a hearing before an administrative law judge ("ALJ"), who confirmed the fine. Gioioso requested review by the Respondent, the Occupational Safety and Health Review Commission ("OSHRC"), which upheld the ALJ's decision. Gioioso now petitions this Court for review of OSHRC's order. Finding no error, we deny the petition for review.

## I. Facts and Procedural History

### A. Regulatory Scheme Regarding Trenches

We first lay the relevant regulatory foundation. Federal safety regulations require that any excavation at least five feet deep in potentially unstable soil be "protected" from cave-ins using approved protective measures such as shoring or trench boxes. See 29 C.F.R. § 1926.652(a)(1) (the "cave-in provision"). In addition, any trench with a depth of four feet or more must have a ladder or other safe means of egress positioned within twenty-five feet of where employees in the trench are working. See id. § 1926.651(c)(2) (the "ladder provision"). All excavations, protective systems, and adjacent areas must be inspected by a "competent person" before the start of work and as needed throughout a shift. Id. § 1926.651(k)(1) (the "inspection

-2-

provision").  A "competent person" is defined as one "who is capable of identifying existing and predictable hazards" and who has the authority to eliminate them.  Id. § 1926.650(b).

**B. Safety Violations at the Work Site**

We now dig into the evidence presented before the ALJ. Gioioso is a public works contractor that constructs and installs water supply and sewer pipes.  As part of its work, Gioioso performs excavations to remove and replace old utility pipes.  On July 10, 2009, Gioioso's employees were performing trenching work to install water service lines at a site in Boston, Massachusetts.

An OSHA compliance officer, Sean Henrikson ("Henrikson"), was assigned to inspect the Gioioso work site.  That morning, while walking to work, Henrikson observed employees in a trench at the site.  Henrikson reported this to his supervisor, who ordered him to inspect the site.  When Henrikson returned around noon to perform the inspection, he saw a Gioioso employee climbing out of an unprotected trench that appeared to be roughly six feet deep. Later that day, around 1:00 P.M., from roughly fifty yards away, Henrikson observed a Gioioso employee, later identified as Robert Bruni ("Bruni"), climb out of the east end of a second trench located near the first trench.  Henrikson walked to the second trench and observed equipment operator Gregory Perreira ("Perreira") standing next to the trench and foreman José Ourique ("Ourique") digging with a shovel in the east end of the trench.

-3-

Henrikson observed that the trench was unprotected and that it rose to the top of Ourique's head. Henrikson identified himself and instructed Ourique to exit the trench. Ourique did so by climbing over what Henrikson identified as a box containing electrical wiring.[1]

The site superintendent, Joseph Zenga ("Zenga"), arrived at the scene roughly five minutes later. According to Henrikson, Zenga told him that he had not inspected the trench or measured it before any employees entered it. Henrikson spoke with Ourique, who, according to Henrikson, said that he was not the "competent person" at the site and that he had not measured the trench. Henrikson also spoke with Perreira, who said that Zenga came by the trench six to eight times per day, roughly once every twenty to thirty minutes. Furthermore, Perreira told Henrikson that Zenga had been by the trench earlier in the day while Ourique was in it, but that Zenga did not say anything to Ourique or to anyone else regarding trench protection.

Henrikson then measured the trench to be roughly 20 feet long and 68 inches deep at the east end, the deepest end. The trench was 51 inches wide. There was a trench box at the site, but it would not have fit into the trench due to the presence of

_____

[1] Gioioso contends that the box contained non-hazardous wiring for telecommunications. The dispute over the contents of the box does not affect our decision.

utility lines. Henrikson also observed that there were no shoring materials at the site.

## C. Procedural History

Based on his observations of the site on July 10, 2009, Henrikson recommended that OSHA issue citations to Gioioso. OSHA cited Gioioso for violation of the "cave-in provision," 29 C.F.R. § 1926.652(a)(1), due to the lack of protection in the trench. Furthermore, because OSHA had previously cited Gioioso for violations of this provision, this citation was designated a "Repeat Citation." OSHA also issued "Serious Citations" for violations of the "ladder provision," id. § 1926.651(c)(2), and the "inspection provision," id. § 1926.651(k)(1). Gioioso contested the citations and the proposed penalties. The parties appeared at a hearing before the ALJ on June 2, 2010.

The citations initially erroneously stated that three employees were in the trench; the parties later stipulated that Ourique was in the trench, and OSHA notified Gioioso prior to the hearing that it would try to prove that a second employee was exposed to the cited hazards. At the hearing, both Perreira and Ourique testified that Bruni had not been in the deep end of the trench, as Henrikson claimed, but rather in the shallow end. Ourique testified that he was the competent person at the site, contradicting Henrikson's claim that Ourique had told him he was not the competent person. Perreira testified that he "may have"

told Henrikson that Zenga, the superintendent, came by the site every twenty to thirty minutes, but that if he had, this was not true. The ALJ determined based on their answers and their demeanor that neither Ourique nor Perreira were reliable witnesses, and thus chose to credit Henrikson's testimony over theirs.

Gioioso did not dispute that Ourique was in the deep end of the trench when Henrikson observed him. However, Gioioso argued that it should not be held liable because Ourique's conduct was the result of unpreventable employee misconduct ("UEM"). To prove a UEM defense, an employer must show that it: "(1) established a work rule to prevent the reckless behavior and/or unsafe condition from occurring, (2) adequately communicated the rule to its employees, (3) took steps to discover incidents of noncompliance, and (4) effectively enforced the rule whenever employees transgressed it." P. Gioioso & Sons, Inc. v. Occupational Safety & Health Review Comm'n, 115 F.3d 100, 109 (1st Cir. 1997) ("Gioioso I"). Gioioso presented evidence on all four of these factors, but the ALJ found Gioioso's evidence to be insufficient to sustain the UEM defense.

First, Gioioso presented evidence -- specifically, a single-page document listing excavation procedures -- to show that it had established work rules to prevent the cited violations. However, the ALJ found that the fact that two employees were digging in an unprotected trench, including a foreman (Ourique), suggested that Gioioso's rules were not effective.

-6-

Second, Gioioso presented evidence that it had communicated its rules to its employees. Gioioso's Safety Director, John Condlin ("Condlin"), testified that Gioioso conducts "tool box talks" at work sites and conducts safety meetings in the office for foremen and supervisors. Condlin testified that Ourique attended a safety meeting on June 4, 2009, and a tool box talk on July 2, 2009, at which trenching safety was discussed. Gioioso also introduced into evidence documents showing the agendas for those two events and that Ourique attended them. However, the ALJ noted that despite attending these meetings, Ourique did not follow Gioioso's safety rules on July 10, 2009. The ALJ also faulted Gioioso for not presenting documentation regarding other safety meetings and tool box talks where trench safety had been discussed.

Third, Gioioso presented evidence to show that it took steps to discover noncompliance. Condlin testified that he visited work sites, sometimes unannounced, to make sure that the work crews complied with safety regulations; Condlin also testified that representatives of Gioioso's insurers sometimes conducted inspections. However, the ALJ pointed out that Zenga, the site superintendent, had observed Ourique in the trench but had never said anything to him or to anyone else about trench protection. The ALJ also noted that Gioioso did not present any documentary evidence of the site visits about which Condlin testified.

Finally, Condlin testified that Ourique had been disciplined for being in the trench without protection. He also testified about other instances in which Gioioso had disciplined employees for safety violations or had stopped work until safety measures could be implemented. However, the ALJ again emphasized that at least three safety violations occurred at the Gioioso site on July 10, 2009. The ALJ also pointed to Condlin's concession that Zenga had not been disciplined for the July 10, 2009 incident or for another incident involving an unprotected trench that occurred on April 24, 2009. The ALJ further noted that Gioioso had failed to present documentation regarding any disciplinary actions it had taken in the previous two years.

Based on the above-mentioned testimony and evidence, the ALJ affirmed the citation for violation of the "cave-in provision," 29 C.F.R. § 1926.652(a)(1). The ALJ also affirmed the "repeat" violation citation in light of Gioioso's previous citations for violation of the "cave-in provision." The ALJ further affirmed the "serious" citations for violation of the "ladder provision," id. § 1926.651(c)(2), and the "competent person" provision, id. § 1926.651(k)(1). Finally, the ALJ affirmed the fines proposed by OSHA for these violations.

Gioioso appealed the ALJ's decision to OSHRC. OSHRC declined to review the decision, at which point the ALJ's decision

became a final order. See 29 U.S.C. § 661(j); 29 C.F.R. § 2200.90(d). Gioioso now petitions this Court for review.

## II. Discussion

### A. Applicable Law and Standard of Review

In order to establish a violation of a safety or health standard, OSHA must prove: (1) that the cited standard applies; (2) that there was a failure to comply with the standard; (3) that employees had access to the violative condition; and (4) that the employer had actual or constructive knowledge of the violation. N&N Contractors, Inc. v. OSHRC, 255 F.3d 122, 125-26 (4th Cir. 2001). Final orders of the Commission are subject to the general judicial review provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701-706. See Gioioso I, 115 F.3d at 107-08. We will uphold agency determinations unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

In conducting our review, we defer to the agency's reasonable interpretation of the Occupational Safety and Health ("OSH") Act and its governing regulations. See Beaver Plant Operations, Inc. v. Herman, 223 F.3d 25, 29 (1st Cir. 2000). The OSH Act also directs that "[t]he findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive." 29 U.S.C. § 660(a); see also Gioioso I, 115 F.3d at 108. This

deferential standard governs even where, as here, the Commission does not hear the case itself but instead adopts an ALJ's findings. Modern Cont'l/Obayashi v. OSHRC, 196 F.3d 274, 280 (1st Cir. 1999). Under this deferential standard, we must "accept reasonable factual inferences drawn by the Commission." Donovan v. Daniel Constr. Co., 692 F.2d 818, 820 (1st Cir. 1982) (citations omitted). We also give great deference to credibility determinations by the ALJ. See Gioioso I, 115 F.3d at 108.

## B. Actual or Constructive Knowledge of Violation

Gioioso argues that it was inappropriate to impose sanctions because OSHA failed to show that Gioioso had actual or constructive knowledge of Ourique's violations. Gioioso contends that because Ourique was the "competent person" on the site, and because he himself violated Gioioso's rules, his knowledge of the violation cannot be imputed to Gioioso. However, Henrikson testified that Ourique told him he was <u>not</u> the competent person. The ALJ chose to credit Henrikson's testimony, and we defer to the ALJ's credibility determination. See Gioioso I, 115 F.3d at 108.

Moreover, an employer can be charged with constructive knowledge of a safety violation that supervisory employees know or should reasonably know about. See Cent. Soya de P.R., Inc. v. Sec'y of Labor, 653 F.2d 38, 40 (1st Cir. 1981) (where two supervisors in charge of facility knew of hazard, "the knowledge of these supervisory employees [was] properly imputed to the

employer"); <u>Simplex Time Recorder Co.</u> v. <u>Sec'y of Labor</u>, 766 F.2d 575, 589 (D.C. Cir. 1985) (finding employer had constructive knowledge of a "readily apparent" safety violation that "indisputably should have been known to management"). Here, Henrikson testified that Perreira told him that Zenga, the site superintendent, came by the trench roughly every twenty or thirty minutes and had been by the trench at one point while Ourique was in it. Thus, it is reasonable to infer that Zenga knew of Ourique's presence in the unprotected trench. Since Zenga was the site superintendent, Gioioso had constructive knowledge of the violation.

## C. Unpreventable Employee Misconduct

Gioioso argues that the ALJ misapplied the law regarding the UEM defense. We bypass the argument on the first two prongs and turn to the third prong. We find no error in the ALJ's ruling on the third prong of the UEM defense, which is supported by substantial evidence.

As to the third prong of the defense -- that the employer took steps to discover noncompliance -- Gioioso argues that the ALJ's decision was contrary to the record evidence. Gioioso contends that the ALJ did not factor in Condlin's testimony that he or Gioioso's insurers conducted inspections of work sites. Gioioso also points out that Zenga was only minutes away from the trench in which Ourique was working, and contends that this showed that

-11-

Gioioso took steps to discover noncompliance by having supervisors nearby.

However, Zenga's failure to do anything after seeing Ourique in the unprotected trench supports a finding of a deficiency in Gioioso's efforts to discover incidents of noncompliance. Moreover, as the ALJ noted, Gioioso did not present any documentary evidence of safety inspections by Condlin or by representatives of Gioioso's insurers. It is not error for an ALJ to "count[] the absence of documentation against the proponent of [a UEM] defense." Gioioso I, 115 F.3d at 110.

We need go no further. Substantial evidence shows that Gioioso failed to satisfy the third prong of the UEM defense. Accordingly, we do not need to consider Gioioso's objections to the ALJ's ruling on the fourth prong.

## D. Whether Substantial Evidence Supports the Decision Below

In its final offensive, Gioioso attacks various factual findings by the ALJ. First, Gioioso attacks the ALJ's reliance on Henrikson's testimony. Gioioso argues that it was wrong to credit Henrikson's account of statements made by Ourique and Perreira because this testimony was inadmissible hearsay. Gioioso also argues that Henrikson's testimony about what he saw at the site was unreliable because he initially observed the trench from fifty feet away. Furthermore, Gioioso contends that, contrary to Henrikson's

-12-

testimony that there was no safe means of exiting the trench, a photograph he took at the site showed a ladder on site.

The hearsay attack bogs down in the trenches of waiver rules and the Federal Rules of Evidence. First, Gioioso waived its challenge to this testimony by not objecting at the hearing before the ALJ. See Fed. R. Evid. 103(a)(1) (objection not made at trial is not preserved on appeal); 29 C.F.R. § 2200.71 (Federal Rules of Evidence applicable to ALJ hearings). See also Capeway Roofing Sys. v. Chao, 391 F.3d 56, 62 (1st Cir. 2004) (hearsay objection to statement made to OSHA inspector waived on appeal because it was not made at the hearing). Moreover, any statements made by Ourique and Perreira to Henrikson were not hearsay because they were statements by Gioioso's employees within the scope of their employment. See Fed. R. Evid. 801(d)(2)(D) (statement not hearsay if it is "offered against an opposing party" and "was made by [that] party's agent or employee on a matter within the scope of that relationship and while it existed"); Astra Pharm. Prods., Inc. v. Occupational Safety & Health Review Comm'n, 681 F.2d 69, 73 n.8 (1st Cir. 1982) (statements by company's employees to OSHA inspector not hearsay under Fed. R. Evid. 801(d)(2)(D)).

As for Gioioso's attacks on Henrikson's credibility, we see no reason not to accord the ALJ's credibility determination our traditional deference. See Gioioso I, 115 F.3d at 108. There is no reason to believe that Henrikson could not have made an accurate

-13-

observation of the trench from fifty feet away. Finally, as OSHRC points out, the photograph to which Gioioso refers shows a ladder on the site in a truck; a ladder in a truck is of course no use to workers at the bottom of a trench.

In addition to challenging the finding of liability, Gioioso attacks the amount of the penalties imposed. Gioioso claims that the ALJ improperly assessed a higher penalty than was warranted because she credited Henrikson's speculation that the box Ourique had to step on to exit the trench contained electrical wiring. However, the danger the ALJ pointed to in her decision was the danger of slipping and falling, not of electrocution. There is no evidence that the fine was based in any way on the type of wiring in the box.

Gioioso also alleges it was prejudiced by the fact that the original OSHA citation mentioned three employees in the trench. However, the ALJ properly found that this citation error was harmless because OSHA notified Gioioso prior to the hearing that it would only try to prove that two employees were in the trench. Finally, Gioioso complains that the repeat citation for violation of the "cave-in provision" was incorrect because the citation does not recite the earlier violation upon which it was based. However, the ALJ properly found that Gioioso was not prejudiced by this error because the parties stipulated to the earlier violation two weeks before the hearing.

### III.  Conclusion

Since we find that substantial evidence supports the decision below, we deny the petition for review.

**Denied**.